UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CANDY M. RILEY,                          Case No. 12-10132

        Plaintiff,                    Lawrence P. Zatkoff
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Michael Hluchaniuk
                                         United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On January 12, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and supplemental security income benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 10, 15).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 30, 2010, alleging that her

disability began on September 1, 2009.  (Dkt. 8-2, Pg ID 39).  The claim was

initially disapproved by the Commissioner on July 6, 2010.  (Dkt. 8-2, Pg ID 39).

Plaintiff requested a hearing, which was held on August 23, 2010.  (Dkt. 8-2, Pg

ID 39).  In a decision dated July 8, 2011, ALJ Jerome B. Blum found that plaintiff

was not disabled.  (Dkt. 8-2, Pg ID 39-47).  Plaintiff requested a review of this

decision on July 21, 2011.  (Dkt. 8-2, Pg ID 35).  The ALJ's decision became the

final decision of the Commissioner when, after the review of additional exhibits, [1]

the Appeals Council, on November 2, 2011, denied plaintiff's request for review.

(Dkt. 8-2, Pg ID 27-29); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th

Cir. 2004).

 For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

 [1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ. In other words, Appeals Council evidence may not be considered for the purpose of
substantial evidence review.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 52 years of age at the time of the most recent administrative hearing.  (Dkt. 8-2, Pg ID 46).  Plaintiff had past relevant work history as a customer service representative and medical laboratory assistant.  (Dkt. 8-2, Pg ID 45).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2009.  (Dkt. 8-2, Pg ID 41).  At step two, the ALJ found that plaintiff's bipolar disorder, alcoholism in remission and poly-substance abuse in remission were "severe" impairments within the meaning of the second sequential step.  (Dkt. 8-2, Pg ID 41).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only unskilled work due to moderate limitation in concentration, persistence or pace.  (Dkt. 8-2, Pg ID 43).  At step five, the ALJ denied plaintiff benefits because, while plaintiff could not perform her past work, she could perform a significant number of jobs available in the national economy.  (Dkt. 8-2, Pg ID 46).

B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ's finding that she had moderate difficulties with concentration, persistence, or pace and was limited to unskilled work at all exertional levels is flawed.  This is so, according to plaintiff, because the ALJ used the Grid Rules as a framework to deny benefits and based on plaintiff's non-exertional limitations, the use of the Grid was inappropriate and erroneous.  Plaintiff contends that the ALJ's finding that her ability to work had been compromised by nonexertional limitations is inconsistent with the finding that such limitations had little or no effect on the occupational base.  Indeed, the ALJ did not use a vocational expert and therefore, plaintiff's non-exertertional limitations were not posed in hypothetical form to such an expert.

Plaintiff also asserts that the ALJ inappropriately found her testimony not fully credible because there was no opinion from a treating or examining physician indicating that she was disabled.  In a similar vein, plaintiff argues that the ALJ should have given more weight to the post-hearing evaluation by the state agency psychiatrist who examined plaintiff on May 13, 2011, at the ALJ's direction.  Dr. Qadir concluded that she had moderate difficulty responding appropriately to usual work situations and moderate problems responding to changes in a routine work setting and assigned a Global Assessment of Functioning rating of 47.  (Tr. 391).  Plaintiff says the ALJ erred by giving no weight to Dr. Qadir's GAF score and

asserts that his limitations are sufficient to preclude the satisfactory performance of all work, including unskilled work.  Plaintiff contends that she requires frequent absences, which would preclude her from all work.

      C.      <u>The Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff could perform unskilled work.  First, the Commissioner contends that the ALJ properly placed great stock in Dr. Qadir's evaluation.  (Tr. 19).  Dr. Qadir determined that plaintiff had no limitations understanding and remembering simple instructions, carrying out simple instructions, and making judgments on simple work-related decisions.  (Tr. 390).  Plaintiff had only mild limitations performing the same activities on complex instructions.  (Tr. 390).  Dr. Qadir also noted that plaintiff's symptoms were better with treatment and "should not cause problems doing simple jobs."  (Tr. 389).

The Commissioner also points out that the ALJ took note of plaintiff's activities, and observed that plaintiff lived alone without assistance, prepared meals, did house and yard work, cared for a pet, shopped for groceries, paid bills, and cared for her personal hygiene.  (Tr. 16 citing Tr. 123-30, Tr. 387-88). The ALJ further noted that plaintiff had no difficulties at all in social functioning; she got along well with family, friends, and neighbors; spoke to her daughter; spoke to others on the phone; did fine with authority figures; got along with teachers and

classmates; and enjoyed helping people.  (Tr. 16 citing Tr. 127-29, 310).  He

further noted that plaintiff read for pleasure on a daily basis and reported other

hobbies as well, including watching television, sewing, walking, and gardening.

(Tr. 127).

Accordingly, the Commissioner contends that the ALJ properly determined

that on this record he need not impose any additional restrictions. Critically, he

observed that the record contained no opinion from any other treating or examining

medical source that plaintiff was disabled or had limitations greater than those that

the ALJ found.  (Tr. 19).  The ALJ acknowledged that plaintiff had a "nervous

breakdown" in September 2009, but also took note of special stressors at work at

that time; plaintiff's boyfriend had died, and she had lost her job, house, and car.

(Tr. 18, 29).  The ALJ also noted that plaintiff was not undergoing treatment for

mental illness at the time.  (Tr. 18).  As the ALJ explained, plaintiff subsequently

availed herself of mental health treatment and did well, as she testified to making

progress with counseling and felt her medications had helped her.  (Tr. 18, 31, 34).

The ALJ cited treatment records that documented plaintiff's good progress, most

notably a May 2010 treatment note from Manroor Haq, M.D., that indicated

plaintiff was "doing fine" and which noted plaintiff reported "doing OK."  (Tr.

18-19 citing Tr. 285-87).

Plaintiff also complains that the ALJ improperly discredited her testimony

6

by finding her not entirely credible. The Commissioner observes that a successful attack on the ALJ's credibility finding requires plaintiff to overcome a high burden, for courts accord such findings great deference. In attacking the ALJ's credibility determination, the Commissioner says that plaintiff fails to appreciate the extent to which the ALJ did find her credible. The ALJ rejected plaintiff's testimony only insofar as it was inconsistent with his finding that she remained able to perform unskilled work. To that end, the ALJ fully credited plaintiff's report of her social activities and activities of daily living, which supported the RFC finding. The ALJ properly considered these activities in rejecting Plaintiff's ultimate contention of disability, as they are inconsistent with her claim of a disabling mental impairment. The ALJ explained that he rejected plaintiff's testimony regarding medication side effects of chronic fatigue, dizziness, and headaches because the record did not support them. (Tr. 19). That, too, is a proper credibility consideration. Rather than cite medical evidence that supports her claims, plaintiff relies on Dr. Qadir's statement that he did not find that she exaggerated her symptoms. According to the Commissioner, Dr. Qadir's statement is of little moment. Unlike the ALJ, Dr. Qadir did not observe plaintiff testify to her alleged medication side effects. In fact, his report makes no mention of such side effects at all. Additionally, even though Dr. Qadir credited plaintiff's statements regarding her symptoms, he still found that plaintiff had no more than

Report and Recommendation
Cross-Motions for Summary Judgment
*Riley v. Comm'r*; Case No. 12-10132

mild limitations processing and following complex instructions, and he concluded that plaintiff could perform at least simple work.  Thus, the Commissioner contends that substantial evidence supports the ALJ's credibility finding and his finding that plaintiff could perform unskilled work.

Plaintiff also makes much of the ALJ's finding that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace.  She argues that such a finding means that she would be off task at work up to 30% of the workday.  According to the Commissioner, nothing in the record supports a finding that plaintiff would be off task as plaintiff asserts.  And, no psychologist, psychiatrist, or other mental health expert indicated that plaintiff would be off task that amount of time.  The Commissioner suggests that plaintiff overstates the impact of the ALJ's finding of moderate limitations.  According to the Commissioner, the ALJ suggested that the record evidence supported a finding of less than moderate restrictions, for he made clear that by finding moderate difficulties, he gave plaintiff "the benefit of a doubt."  (Tr. 16).  Additionally, as explained, the ALJ accounted for these moderate difficulties by limiting plaintiff to unskilled work.  (Tr. 16, 17).  While plaintiff suggests that the ALJ should have imposed additional unspecified restrictions to address these limitations, the Commissioner contends that the record provides no indication that such additional restrictions were necessary.  Indeed, not only did plaintiff read for pleasure, she also engaged in

other activities that require sustained concentration, including sewing, paying bills, and performing other household chores herself. According to the Commissioner, not only does plaintiff fail to identify any other non-exertional restrictions she believes the ALJ should have imposed, she does not explain why the limitation to unskilled work did not adequately accommodate the effects of her impairments. The Commissioner also points out that other courts in this district have similarly affirmed an ALJ's restricting a claimant with such moderate difficulties to unskilled work. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *8 (E.D. Mich. 2008). As the *Lewicki* court observed, its holding that a limitation to simple, routine work could accommodate a moderate impairment is supported by the Sixth Circuit's decision in *Infantado v. Astrue*, 2008 WL 345344 (6th Cir. 2008), and this Court's decision in *Latare v. Commissioner of Social Security*, 2009 WL 1044836 (E.D. Mich. 2009). Likewise, the Commissioner maintains that the ALJ's limitation is, therefore, consistent with the medical record, and the ALJ sufficiently accounted for plaintiff's limitations in this functional domain.

Plaintiff maintains that even so, the ALJ should not have relied on the Medical Vocational rules to determine disability, but should have sought vocational expert testimony to determine if a significant number of jobs existed that she could perform. According to the Commissioner, plaintiff does not dispute

that application of Medical Vocational Rule 204.00 (the rule the ALJ applied) directs a finding of no disability given the ALJ's RFC finding.  This is because the ALJ found that plaintiff could perform work at all levels of exertion – a finding that, as explained, plaintiff does not contest.  The Commissioner contends that her failure to contest this aspect of the RFC finding is an admission, then, that she could perform even heavy and very heavy work. According to the Commissioner, Medical Vocational Rule 204.00 makes clear a significant reduction to the occupational base is not a concern when a claimant, like plaintiff, has no exertional restrictions.  That is because the occupational base in such a case is vastly larger, and the non-exertional restrictions are thus not likely to reduce the occupational base to the point that no work exists in significant numbers that the claimant could perform.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Plaintiff's claim of error is twofold. First, plaintiff claims that the ALJ did not properly account for her mental impairment by limiting her to unskilled work. As has been discussed in numerous cases, there is no "bright-line" indicating that a moderate impairment of concentration, persistence, or pace is inconsistent with unskilled work. Rather, the ultimate question is whether the ALJ's decision was supported by substantial evidence. *Lewicki v. Comm'r*, 2010 WL 3905375, at *3 (E.D. Mich. 2010); *see also Schalk v. Comm'r*, 2011 WL 4406824, at *11 (E.D. Mich. 2011) (discussing how "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, [the court] must look at the record as a whole and determine if substantial evidence supports the ALJ's

RFC.”); *Cwik v. Comm'r*, 2012 WL 1033578, at *10 (E.D. Mich. 2012) (distinguishing cases that do not order remand where a medical professional finds moderate difficulties in concentration, persistence or pace yet still concludes the claimant is capable of performing sustained work, from those cases that do order remand for further proceedings when the ALJ makes a finding of moderate limitations in concentration, persistence or pace without the benefit of a medical opinion finding that the claimant could perform sustained work despite his moderate deficits).  For example, in *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325 at *7 (E.D. Mich. 2008), the court concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with concentration, persistence or pace, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical question posted to the vocational expert.  *Id*. at *8.

In this case, the consultative examining physician found that plaintiff has a mild limitation in the ability to remember complex instructions.  Yet, the ALJ, giving plaintiff the benefit of the doubt, concluded that plaintiff had a moderate limitation in this area.  The ALJ then concluded that this moderate limitation could be accommodated by limiting plaintiff to unskilled work.  Unskilled work is defined as

work which needs little or no judgment to do simple
duties that can be learned on the job in a short period of
time. The job may or may not require considerable
strength. For example, we consider jobs unskilled if the
primary work duties are handling, feeding and offbearing
(that is, placing or removing materials from machines
which are automatic or operated by others), or machine
tending, and a person can usually learn to do the job in 30
days, and little specific vocational preparation and
judgment are needed. A person does not gain work skills
by doing unskilled jobs.

20 C.F.R. § 404.1568(a).  Similarly, Ruling 96-9p states that unskilled work

generally requires "understanding, remembering and carrying out simple

instructions" as well as making "simple work-related decisions."  SSR 96-9p.

Notably, Dr. Qadir opined that plaintiff had no limitation in the ability to

understand and remember simple instructions, to carry out simple instructions, and

the ability to make judgments on simple work-related decisions.  (Dkt. 8-9 Pg ID

390).  Dr. Qadir also specifically opined that plaintiff's symptoms of depression

were better with treatment and should not cause problems in doing simple jobs.

(Dkt. 8-9, Pg ID 422).  Despite the fact that Dr. Qadir assigned a GAF score to

plaintiff of 47,[2] the ALJ's RFC was entirely consistent with Dr. Qadir's

---

[2] In this Circuit, an ALJ need not put any stock in a GAF score in the first place, *see*
*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006), citing *Howard v.*
*Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Moreover, the Commissioner "'has
declined to endorse the [GAF] score for use in the Social Security and SSI disability programs,'
and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of
the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 415 (6th
Cir. 2006), quoting *Wind v. Barnhart*, 133 Fed.Appx. 684, 691-92 n. 5 (11th Cir. 2005), quoting
65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).

conclusions, and is even slightly more restrictive than required by Dr. Qadir's opinions. Thus, the undersigned sees no reversible error in the ALJ's formulation of the RFC and it is supported by substantial evidence.

Next, the undersigned finds no error with respect to the ALJ's use of the Grid as a framework to determine that there are sufficient jobs in the economy that plaintiff could perform with her RFC. A grid rule cannot not apply when RFC findings do not coincide with all the grid criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00. Since the grids do not take into account limiting or disabling effects of nonexertional impairments, direct application of the grids to determine disability is not permitted. The Commissioner nonetheless permits administrative law judges to consult them as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by ... nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). Social Security Ruling 85-15 addresses this "framework" analysis, and directs that when evaluating nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's RFC and vocational factors, to determine the extent of impairment caused by exertional limitations. *See* SSR 85-15, The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *3 (SSA 1985). The administrative judge should next determine how much that

claimant's "occupational base," (the entire exertional span from sedentary work through heavy work), is further reduced by effects of nonexertional impairments.

Thus, even in cases in which a nonexertional impairment is determined to be significant, however, the Commissioner may yet rely exclusively on the Grid if "a non-strength impairment ... has the effect only of reducing that occupational base marginally[.]"  *Heath v. Astrue*, 2012 WL 6913440 (D. Maine 2012) (citations omitted).  "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Id*., quoting *Seavey v. Barnhart*, 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

Here, the ALJ conducted the analysis required under SSR 85-15:

> If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or  no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.  Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work.  These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for

> person with solely mental impairments who retain the
> capacity to meet the intellectual and emotional demands
> of such jobs on a sustained basis. Persons with this large
> job base may be found disabled because of adversities in
> age, education, and work experience. However, the
> claimant is not closely approaching retirement age (or
> even of advanced age), she has more than a high school
> education, and she has significant semi-skilled work
> experience (See Examples 4 and 5 of SSR 85-15).

(Dkt. 8-2, Pg ID 46-47). The present case is very similar to the facts presented in

*Ramsey v. Astrue*, 2012 WL 5499900, *6 (E.D. Ca. 2012), where the plaintiff

contended that vocational testimony was required because he had nonexertional

impairments. In *Ramsey*, the ALJ specifically found that the plaintiff had an

ability to perform work at all exertional levels and then went on to find that

although plaintiff's ability to work was compromised by nonexertional limitations,

those limitations had little or no effect on the occupational base of unskilled work

at all exertional levels. *Id*. In *Ramsey*, just as in this case, the ALJ relied on Social

Security Ruling 85-15 which notes that unskilled jobs ordinarily involve dealing

primarily with objects, not people. *Id*., citing SSR 85-15. The *Ramsey* court

observed that SSR 85-15 notes that there are over 2,500 unskilled jobs that can be

performed at the medium, light and sedentary exertion levels and that there are

additional unskilled jobs available at the heavy exertion level. SSR 85-15. In

*Ramsey*, the ALJ assessed the plaintiff's residual functional capacity as being

limited to simple, repetitive tasks that do not involve more than occasional

interaction with the public and concluded that these limitations were consistent with unskilled work. *Id.*, citing SSR 85-15 (basic mental demands of unskilled work include the abilities to understand, carry out, and remember simple instructions and respond appropriately to supervision and coworkers). The court held that, "[u]nder these circumstances, the ALJ properly relied on the grids which administratively notice a significant number of jobs available to plaintiff." *Id.* Similarly, the undersigned finds no error in the ALJ's reliance on SSR 85-15 to conclude that plaintiff's nonexertional limitations did not significantly erode the occupational base. Therefore, the ALJ was entitled to use the Grid as a framework to conclude that there were sufficient unskilled jobs at all exertional levels that plaintiff could perform with her RFC.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

Report and Recommendation
Cross-Motions for Summary Judgment
*Riley v. Comm'r*; Case No. 12-10132

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 22, 2013                              s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 22, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kenneth F. Laritz, Vanessa Mays, William L. Woodward, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood       
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
